IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARCUS I., by and through his ) CIVIL NO. 10-00381 SOM/BMK
parent and next best friend, )
KAREN I., ) ORDER PARTIALLY VACATING AND
) REMANDING THE HEARINGS
        Plaintiff, ) OFFICER'S JUNE 9, 2010,
) DECISION
    vs. )
)
DEPARTMENT OF EDUCATION, )
State of Hawaii, )
)
        Defendant. )
_____ )

ORDER PARTIALLY VACATING AND REMANDING
THE HEARINGS OFFICER'S JUNE 9, 2010, DECISION

I.      INTRODUCTION.

        This case marks the third time that Marcus I., an

autistic child receiving services from the State of Hawaii under

the Individuals with Disabilities Education Act ("IDEA"), and his

mother have appeared before this court to challenge an

educational plan proposed for Marcus by the State of Hawaii

Department of Education ("DOE").  Marcus's mother, proceeding on

behalf of Marcus, seeks reversal of the Administrative Hearings

Officer's Findings of Fact, Conclusions of Law and Decision

("Decision") regarding Marcus's education.  The Decision, issued

on June 9, 2010, concluded that Defendant DOE had offered Marcus

a Free Appropriate Public Education ("FAPE") for the 2008-09 and

2009-10 school years.  Marcus's mother appeals this ruling,

arguing that two Individualized Education Plans ("IEP") (i.e.,

the IEP dated May 5, 2008, and the IEP dated May 4 and 12, 2009),

as well as the Prior Written Notices ("PWN") dated May 16, 2008, and July 7, 2009, violated the IDEA, 20 U.S.C. §§ 1400-1482, in a number of different ways.

The court rejects the majority of Marcus's mother's claims of error because they are largely unsupported by the record. However, the court concludes that there are unresolved factual issues regarding: (1) whether Baldwin High School, in conjunction with any other appropriate agency that might be responsible for implementing the May 2009 IEP, had the ability to implement the extended school year, occupational therapy, and speech therapy services in that IEP; and (2) whether the May 2008 educational placement offer of "the public high school in his home community" was specific enough to alert Marcus's mother that the school district was proposing that Marcus be placed at Baldwin High School, as opposed to Maui High School. The court now vacates the Decision and remands those two issues to the Hearings Officer for the limited purpose of conducting further proceedings limited to those issues.

II.     STATUTORY FRAMEWORK.

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education." Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310 (1988)). For a state to qualify for federal financial assistance

under the IDEA, it "must demonstrate that it 'has in effect a policy that assures all handicapped children the right to a free appropriate public education.'" <u>Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley</u>, 458 U.S. 176, 180-81 (1982) ("<u>Rowley</u>") (quoting 20 U.S.C. § 1412(1)). According to the IDEA, a FAPE consists of:

> special education and services that-
>
> (A) have been provided at public expense, under public supervision and direction, and without charge;
>
> (B) meet the standards of the State educational agency;
>
> (C) include an appropriate preschool, elementary school or secondary school education in the State involved; and
>
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an IEP, and determine an appropriate educational placement for the student. <u>See</u> 20 U.S.C. § 1414.

The student's FAPE must be "tailored to the unique needs of the handicapped child by means of an 'individualized educational program' (IEP)." <u>Rowley</u>, 458 U.S. at 181 (citing 20 U.S.C. § 1401(18)). The IEP, which is prepared at a meeting

between a qualified representative of the local educational
agency, the child's teacher, the child's parents or guardian,
and, when appropriate, the child, consists of a written document
containing:

> (i) A statement of the present levels of
> educational performance of the child;
>
> (ii) A statement of annual goals, including
> short-term instructional objectives;
>
> (iii) A statement of the specific educational
> services to be provided to the child, and the
> extent to which the child will be able to
> participate in regular educational programs;
>
> . . . .
>
> (v) The projected date for initiation and
> anticipated duration of these services; and
>
> (vi) Appropriate objective criteria and
> evaluation procedures and schedules for
> determining on at least an annual basis,
> whether instructional objectives are being
> achieved.

34 C.F.R. § 222.50. Local or regional educational agencies must
review, and, when appropriate, revise each child's IEP at least
annually. 20 U.S.C. § 1414(d)(4). In addition, "[p]arental
involvement is a central feature of the IDEA." Hoeft, 967 F.2d
at 1300. "Parents participate along with teachers and school
district representatives in the process of determining what
constitutes a 'free appropriate public education' for each
disabled child." Id.

In addition to the IEP, the IDEA also requires written

prior notice to parents when an educational agency proposes, or refuses, to initiate or change the educational placement of a disabled child. See 20 U.S.C. § 1415(b)(3). The parties in this case refer to these notices as "PWNs."

Violations of the IDEA may arise in two situations. First, a school district, in creating and implementing an IEP, may run afoul of the IDEA's procedural requirements. Rowley, 458 U.S. at 205-06. However, procedural flaws in the IEP process only deny a child a FAPE when the flaws affect the "substantive rights" of the parent or child, including the loss of a child's educational opportunity or an infringement on the parents' opportunity to participate in the IEP process. L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2009).

Second, a school district may become liable for a substantive violation of the IDEA by drafting an IEP that is not reasonably calculated to enable the child to receive educational benefits. Id. at 206-07. The district must provide the student with a FAPE that is "appropriately designed and implemented so as to convey" to the student a "meaningful" benefit. Adams v. Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999). Marcus's mother alleges that the DOE violated the IDEA's substantive and procedural requirements.

When a public school fails to provide a FAPE, and the parent establishes that placement at a private school is

appropriate, the IDEA authorizes reimbursement.  See 20 U.S.C.
§ 1412 (a)(10)(C)(ii); Sch. Comm. of Burlington v. Dep't of Ed.
of Mass., 471 U.S. 359, 370 (1985).

III.     FACTUAL AND PROCEDURAL BACKGROUND.

At the time of the Hearings Officer's Decision, Marcus
I. was sixteen years old.  Administrative Record ("AR") at 96.
Marcus receives his education at Loveland Academy, a private
mental health program on Oahu.  Id. at 94, 96.  Marcus lives at a
residential facility run by Loveland Academy.  Id. at 96.
Marcus's mother and two younger siblings live on Maui, although
Marcus's mother is away from Maui two weeks out of every month
because of her job as a flight attendant.  Id.; Transcript of
Proceedings ("Transcript") at 22.

Through an August 9, 2006, Settlement Agreement, the
parties agreed to place Marcus at Loveland Academy for the 2006-
07 school year.  AR at 97.  In an earlier case, Marcus's mother
challenged Marcus's two 2007-08 IEPs, which had placed Marcus at
a residential facility in Texas.  Id.  The Hearings Officer found
in favor of the DOE, a ruling upheld by Judge Ezra of this court.
See Marcus I. ex rel. Karen I. v. Hawaii, Dep't of Educ., Civ.
No. 08-00491 DAE/BMK, 2009 WL 3378589 (D. Haw. Oct. 21, 2009).
However, Judge Ezra determined that the DOE had not been entirely
forthright before the Hearings Officer.  See id. at *8-*9.
Specifically, Judge Ezra noted that the DOE had received

additional information relevant to Marcus's development at
Loveland Academy prior to the due process hearing, and had
subsequently met to fashion a new IEP that proposed placement at
a local public school. The DOE nevertheless argued to the
Hearings Officer that the IEP proposing placement in Texas
constituted the least restrictive environment ("LRE") for Marcus.
See id. Judge Ezra noted that Lisa Gifford, a district special
education specialist, failed to inform the Hearings Officer that
Marcus had progressed to the point that the district was
recommending he be placed in a public high school. See id. at
*9. This testimony, the court held, "certainly didn't paint a
full picture of Marcus's abilities and needs." Id.
Nevertheless, noting that the court was limited to reviewing the
IEPs at the time they were drafted, Judge Ezra determined that
the IEPs did not deny Marcus a FAPE. Id. at *9-*10. Marcus
appealed Judge Ezra's ruling, and the matter was referred to
mediation by the Ninth Circuit following oral argument earlier
this year.

Marcus's May 16, 2008, PWN stated that Marcus's
"educational placement" was "the public high school in his home
community." See Petitioners' Exhibits ("PET") 148. The 2008 IEP
largely recommended that Marcus be educated in special education
classes, separate from the general education peers. See
generally PET 46-63. Among many other provisions, Marcus's 2008

7

IEP provided for interaction with nondisabled peers in 50 percent of Marcus's extracurricular and extended school year activities. See PET 62.

Marcus's May 2009 IEP required, inter alia, that Marcus receive extensive extended year services after school and on weekends, occupational therapy twice a week, and speech therapy five times a week. PET 41. The IEP also required one-to-one paraprofessional support during the school day, after school, and on weekends. Id.

On November 10, 2009, Marcus's mother filed her request for a due process hearing concerning the IEPs and PWNs at issue here. AR at 97. Hearings Officer Richard A. Young conducted the due process hearing and heard testimony over the course of five days in April 2010. AR at 95-96.

The DOE presented evidence that Marcus's mother was present at an April 23, 2008, meeting to review evaluations and telephonically participated in the May 5, 2008, meeting regarding Marcus's 2008 IEP. Transcript at 936-37; Respondent's Exhibits ("MI") at 33-34 (meeting sign-in sheets). Both meetings were held at Baldwin High School. MI at 33-34. Marcus's mother testified at the administrative hearing that she did not recall discussion at the meetings about placing Marcus at Baldwin High School. Transcript at 55. In response, the DOE offered testimony of Mary Auvil, who was vice-principal of Baldwin High

School in May 2008, that the IEP team did discuss placing Marcus at Baldwin High School at the May 5, 2008, IEP meeting. See Transcript at 964-65.

Marcus's mother testified that she visited Baldwin High School the week before the administrative hearing and was told by the special education teacher, Shaun Dunn, as well as the head of the special education department, Teressa Beard, that Baldwin did not have the ability to offer the extended school year services, speech therapy, and occupational therapy listed in the May 2009 IEP. Transcript at 58-63, 69-74. Her testimony was corroborated by Patricia Dukes, the head of Loveland Academy, and Elena Hamm, a special education teacher at Loveland Academy, both of whom accompanied Marcus's mother to Baldwin High School. Transcript at 203-04, 436-37. Dukes further testified that the Baldwin High School program was inappropriate for Marcus because there were no fences or gates, which Marcus needed to prevent him from running away. She testified that the other students at Baldwin High School appeared lower functioning than Marcus and that the facilities were dirty and noisy. Transcript at 437-45.

Natalie Gonsalves, the principal at Baldwin High School, testified that a child's IEP controls the services that are provided. Transcript at 653-63. She testified that Baldwin High School would have created an after-school care program for Marcus if the IEP provided for such a program. Transcript at

9

662-63.  Gonsalves testified that some of Marcus's extended school year services (such as after-hours services) might have been provided by the Department of Health rather than the Department of Education, but admitted that no one from the Department of Health had attended Marcus's May 2009 IEP meeting. Transcript at 665-68.

The Hearings Officer issued his decision on June 9, 2010.  AR at 94.  He held that Marcus's mother had failed to demonstrate that the 2008 or 2009 IEPs and PWNs denied Marcus a FAPE, that Baldwin High School was an appropriate placement for Marcus, and that Marcus's mother had failed to establish discrimination by the DOE against Marcus or Marcus's mother in any way.  AR at 112.  This appeal followed.

IV.      STANDARD OF REVIEW.

Any party aggrieved by a decision of a due process hearings officer under the IDEA may appeal the findings and decision to any state court or a United States district court. 20 U.S.C. § 1415(i)(2)(A).  The party challenging the administrative decision has the burden of proving deficiencies in the administrative decision.   Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996).

When evaluating an appeal of an administrative decision, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence

at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).

V.     <u>ANALYSIS.</u>

    A.     <u>Alleged Substantive Defects in the May 2009 IEP.</u>

    Marcus's May 2009 IEP requires, <u>inter alia</u>, the following services for Marcus:

> (1)  Extended school year services of 180 minutes after school during the weekdays (from 2:00 PM to 5:00 PM) and 300 minutes per day on the weekends;
>
> (2)  Occupational therapy for 30 minutes twice per week;
>
> (3)  Speech and language therapy for 30 minutes five times per week; and
>
> (4)  One-to-one paraprofessional support for 300 minutes per day, for health and safety reasons; and one-to-one paraprofessional support for after school and weekend support.

<u>See</u> PET 41.

    Marcus's mother argues that Baldwin High School lacked the capacity to implement these aspects of the IEP.  Pet. Br. at 28-32.  According to Marcus's mother, she visited Baldwin High School, along with Dukes and Hamm, and spoke with the current teacher of Baldwin's CBI program, Shaun Dunn, as well as Teressa Beard, head of the special education department.  Pet. Br. at 29; Transcript at 59.  Dunn and Beard told the group that the CBI program did not have an after-school component.  Transcript at

59, 443. Dunn told them that occupational therapy was offered
only once a quarter for fifteen minutes, Transcript at 60-62,
203, 442, and that speech therapy was offered only once a week,
Transcript at 62, 203, 441-42. Dunn was not aware of any weekend
support planned for Marcus. Transcript at 63. Additionally,
according to Marcus's mother, the paraprofessional support
employed by Baldwin High School lacked proper training. <u>See</u> Pet.
Br. at 29; Transcript at 71.[1]

Marcus's mother also offered testimony, through Dukes,
that the Baldwin High School program was inappropriate for Marcus
because there were no fences or gates, which he needed to prevent
him from running away, because the other students were lower
functioning than Marcus, and because the facilities were dirty
and noisy. Transcript at 437-45.

In response, the DOE presented testimony from
Gonsalves, the Baldwin High School principal, that a child's IEP
controls the services that are provided. Transcript at 653-63.
As noted above, Gonsalves testified that Baldwin would have
created an after-school care program for Marcus if the IEP

---

[1]Marcus's mother also argues, without factual or legal
support, that "the goals and objectives in the IEP itself are not
community-based" and "require classroom intervention and
instruction." Pet. Br. at 29. Because Marcus's mother fails to
support these contentions beyond a bare assertion, the court
deems this argument to be waived on appeal. <u>See</u> <u>Te-Moak Tribe of</u>
<u>W. Shoshone of Nev. v. U.S. Dep't of Interior</u>, 608 F.3d 592, 614
n.23 (9th Cir. 2010); <u>Entm't Res. Group, Inc. v. Genesis Creative</u>
<u>Group, Inc.</u>, 122 F.3d 1211, 1217 (9th Cir. 1997); Local Rule 7.6.

provided for such a program and that some of Marcus's extended school year services might have been provided by the Department of Health rather than the Department of Education, but admitted that no one from the Department of Health attended Marcus's May 2009 IEP meeting. Transcript at 662-68. Finally, the DOE argued, the visit to Baldwin High School testified to by Marcus's mother and the Loveland Academy staff was not relevant because it occurred the week prior to the administrative hearing, rather than at the time the contested IEP was developed. See Resp. Br. at 17 n.11; Transcript at 59, 181, 436.

Marcus's mother made the argument she advances before this court to the Hearings Officer, see AR at 71-73, and the Hearings Officer's findings of fact acknowledge the testimony above, see Decision, AR at 100-01. However, the Decision does not expressly address the perceived shortcomings with the IEP's implementation identified by Marcus's mother and her witnesses. See generally Decision, AR at 110-11 (addressing "Whether the May 12, 2009 IEP Offered Student a FAPE in the LRE"). The Hearings Officer found that the open nature of Baldwin's campus would not pose a danger to Marcus because Marcus would be provided with a personal aide, and the security personnel at Baldwin could deal with Marcus's "limited elopement issues." AR at 110. However, the Decision did not address whether Baldwin High School had the ability to provide the extended school year services, speech

therapy, and language therapy outlined in the IEP.

Instead, the Hearings Officer's Decision relied heavily
on the expectation that Marcus would learn socialization and
familiarity with his home community by attending Baldwin High
School (as opposed to Loveland Academy, which is located on
Oahu). AR at 111. According to the Hearings Officer, "Student's
greatest need is to be provided with the motivational and
socialization opportunities that placement at the home school
will provide." Id. Therefore, the Hearings Officer concluded,
the May 2009 IEP offered Marcus a FAPE.

The court agrees that the record supports a finding
that Baldwin High School would offer greater socialization and
contact with Marcus's home community than Loveland. However, the
court cannot determine from the record whether Baldwin High
School had the ability to implement the IEP, specifically the
extended year services, occupational therapy, and speech therapy
required. If Baldwin High School lacked the ability to implement
these material provisions of the IEP for the 2009-10 school year,
the court questions how the IEP could provide Marcus a FAPE. See
Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811,
822 (9th Cir. 2007) (holding that "a material failure to
implement an IEP violates the IDEA" and explaining that "[a]
material failure occurs when there is more than a minor
discrepancy between the services a school provides to a disabled

child and the services required by the child's IEP"); see, e.g., id. at 823-25 (holding that a five-hour-per-week shortfall in math instruction constituted a material failure to implement the IEP, but that minor failures to implement the child's "behavior management plan" did not violate the IDEA).

The Hearings Officer is best equipped to determine whether Baldwin High School, in conjunction with any other appropriate agency that might be involved with providing the IEP's extended school year, occupational therapy, and speech therapy services, had the ability to implement these aspects of Marcus's May 2009 IEP. The court therefore remands this case to the Hearings Officer for the limited purpose of determining this issue.

B.    Failure to Name Specific School (May 2008 PWN).

Marcus's mother argues that the May 2008 IEP and PWN are flawed because the PWN "only offers an unspecified location of services and not an educational setting." Pet. Br. at 21. Specifically, Marcus's mother objects to the PWN's placement of Marcus in "the public high school in his home community." Id.; see PET 148. According to Marcus's mother, this violates 20 U.S.C. § 1414(d)(1)(A)(i), 34 C.F.R. §§ 300.115-300.116, the Ninth Circuit's holding in Union School District v. Smith, 15 F.3d 1519 (9th Cir. 1994), and Hawaii Administrative Rules § 8-56-2. Pet. Br. at 21-26. Marcus's mother's argument is not

completely clear, but it appears she is contending that she did not know whether Baldwin High School or Maui High School, the other local high school in her community, was being offered to Marcus.

The Hearings Officer rejected Marcus's mother's contention that the DOE was required to inform Marcus's mother what school Marcus would be placed in. The Hearings Officer held that "the DOE is only obligated to state the level of placement, not the location of the placement." AR at 109. He did not, therefore, address Marcus's mother's contention that she did not understand where Marcus was being placed. The DOE, in its briefing, similarly asserts that "[t]here is no requirement that a FAPE specifically state the actual school and the specific classroom where the student will receive their educational program." Resp. Br. at 36. The DOE also argues that the IEP team discussed Baldwin High School at the May 5, 2008, IEP meeting. See id. at 36 (citing testimony of Mary Auvil, Transcript at 964-65). In response, Marcus's mother points to her own testimony that she does not recall whether Baldwin High School was discussed at the May 2008 IEP meeting. Transcript at 55.

It is not clear to the court, on the current record presented by the parties, that the placement offer was specific enough for Marcus's mother to determine whether Marcus would

attend Baldwin High School or Maui High School.  If it was not,
this ambiguity likely violates the Ninth Circuit's holding in
Union School District.  In that case, a school district failed to
present the parents of an autistic child with a formal offer of
placement in the district's program for autistic children because
it believed the child resided out of district, such that the
district was not responsible for the child's education.  See 15
F.3d at 1524-25.  After the Hearings Officer determined that the
family resided in the defendant's district, the district then
argued that the district's program would have been an appropriate
placement for the child, and the reason the school district
failed to offer placement there was the parents' expressed
unwillingness to consider that placement.  Id. at 1525.

        The Ninth Circuit rejected this argument, and held that
the school district's failure to "offer formally an appropriate
educational placement" violated the IDEA.  Id. at 1526.  "The
requirement of a formal, written offer," the court reasoned,
"creates a clear record that will do much to eliminate
troublesome factual disputes many years later about when
placements were offered, what placements were offered, and what
additional educational assistance was offered to supplement a
placement, if any."  Id.  Moreover, the court held, "a formal,
specific offer" would have allowed the parents to consider
whether to accept the specific school offered and would prepare

the district to present evidence regarding that particular school at a due process hearing. Id. Ultimately, the school district's failure to identify a school at which special educational services were to be provided gave the parents nothing to evaluate, and so violated the IDEA. Id.[2]

The DOE's offer in this case, while certainly more definite than the proposal in Union School District, poses some of the same potential problems. Although there is no indication that Marcus's mother would have accepted a placement at either Baldwin High School or Maui High School, without a formal offer, she had nothing to officially evaluate. Indeed, as she points out, aspects of the IEP seem to suggest that the DOE was proposing a placement off-island, rather than at either Baldwin

---

[2]At the hearing on this motion, the DOE argued for the first time that Union School District has been superseded by a provision of the Code of Federal Regulations--specifically, 34 C.F.R. § 300.116 ("Placements"), promulgated in 2006. The DOE referred the court to subsection (b), arguing that there is now no requirement that a placement be in writing. It is true that subsection (b) does not indicate whether a placement must be in writing. However, section 300.116(b) is identical in substance to former section 300.552(a), which was in existence at the time Union School District was decided. See 34 C.F.R. § 300.552(a) (1994); Notice of Proposed Rulemaking, 70 Fed. Reg. 35,782, 35,787 (June 21, 2005) ("Proposed § 300.116, regarding placements, would retain the language currently in § 300.552, except that paragraph (b)(3) would be revised to clarify that a child's placement must be as close as possible to the child's home unless the parent agrees otherwise."). Because a substantially similar provision governing placements was in place at the time Union School District was decided, the court concludes that section 300.116 does not alter the applicability of the Ninth Circuit's holding in Union School District.

High School or Maui High School.  See Pet. Br. at 27; May 2008
IEP, PET 61 (providing that "One transportation service line is
for the student to travel to see his family and one
transportation line will be for Marcus' family to visit him on
Oahu.  The student will have 2:1 adult supervision with familiar
educational assistants . . . during air transit . . . .").

        The remand of this PWN issue is not intended to suggest
that Marcus's mother's claim to confusion should necessarily be
accepted.  The IEP meeting itself, which Marcus's mother
participated in telephonically, as well as an April 2008 meeting
convened to review Marcus's evaluations, which Marcus's mother
attended in person, were both held at Baldwin High School.  MI at
33-34; Transcript at 936-37.  The DOE presented testimony that
Baldwin High School was indeed discussed at the May 2008 IEP
meeting, notwithstanding Marcus's mother's testimony that she did
not recall such a discussion.  It is also possible that Maui High
School is not actually in Marcus's mother's home community, or it
may not have had the programming available at Baldwin High School
for disabled children.  Alternatively, administrators at Baldwin
High School may have had sufficient contact with Marcus's mother
to have made it unreasonable for her to claim confusion about the
PWN's proposed placement.  In short, there is a disputed issue of
fact on this issue that should be resolved by the Hearings
Officer in the first instance.  In ordering this remand, this

19

court is well aware that it has the authority to conduct its own evidentiary hearing on this matter (as well as on the previously mentioned issue of Baldwin High School's ability to implement that May 2009 IEP). However, because the Hearings Officer has already received evidence relevant to the remand subjects, it appears to this court to be more efficient to ask the Hearings Officer to make these determinations.

Marcus's mother's remaining contentions of error with respect to the offer in the PWN are unfounded. Section 1414 requires, <u>inter alia</u>, that an IEP state "the projected date for the beginning of the services and modifications . . . , and the anticipated frequency, *location*, and duration of those services and modifications." 20 U.S.C. § 1414(d)(1)(A)(i)(VII) (emphasis added). However, the IDEA's requirement that an IEP specify a "location" does not require the IEP to state a particular school. As the Second Circuit has explained, the United States Department of Education ("USDOE") considered this issue in its commentary to 1997 amendments to the IDEA. <u>See</u> <u>T.Y. v. N.Y.C. Dep't of Educ.</u>, 584 F.3d 412, 419-20 (2d Cir. 2009). The USDOE concluded that "[t]he location of services in the context of an IEP generally refers to the type of environment that is the appropriate place for provision of the service. For example, is the related service to be provided in the child's regular classroom or resource room?" <u>Id.</u> at 420 (quoting Assistance to States for the

20

Education of Children with Disabilities & the Early Intervention
Program for Infants & Toddlers, 64 Fed. Reg. 12,406, 12,594 (Mar.
12, 1999)).  The Second Circuit further noted that the Senate
Commentary provided "regular classroom" as an example of
"location."  584 F.3d at 420 (citing S. Rep. No. 105-17, at 21
(1997)).  Therefore, "location" does not refer to a specific
school.

     This court is not bound by the Fourth Circuit's ruling
to the contrary in A.K. ex rel. J.K. v. Alexandria City School
Board, 484 F.3d 672 (4th Cir. 2007), cited by Marcus's mother,
Pet. Br. at 26, and the court declines to follow the holding of
the Fourth Circuit.  See A.K., 484 F.3d at 680-83 (holding that
an IEP's offer of an unspecified "private day school" violated
the IDEA's requirement that an IEP state the "location" of
services).  The court notes that this decision failed to consider
the commentary by the USDOE or the Senate, discussed above.

     In this case, the IEP specifies the "location" of
various services to be provided to Marcus I. as "Special Ed." and
"General Ed./SPED."  See PET 60.  The IEP therefore satisfied the
requirements of § 1414(d)(1)(A)(i)(VII).

     Nor has Marcus's mother demonstrated that the IEP or
PWN violates 34 C.F.R. §§ 300.115 or 300.116, or former Hawaii
Administrative Rules § 8-56-2.  Section 300.115 requires
generally that public agencies maintain a "continuum" of

21

placements that can "meet the needs of children with disabilities for special education and related services."  34 C.F.R. § 300.115(a).  Section 300.116 contains additional requirements related to the selection of an educational placement, and Marcus's mother points the court to language requiring that, "[i]n selecting the LRE, consideration [be] given to any potential harmful effect on the child or on the quality of services that he or she needs."  See also Haw. Admin. Rules § 8-56-2 (2009) ("Placement shall be provided in the least restrictive environment in a continuum of educational arrangements.).  Marcus's mother offers no evidence that the DOE has failed to maintain a continuum of placements.  Moreover, she fails to explain how the designation of "the public high school in [Marcus's] home community" (as opposed to Baldwin High School or Maui High School in particular) fails to consider potential harmful effects on Marcus or the quality of services he needs.

Pursuant to Union School District, the court remands this case to the Hearings Officer for the limited purpose of determining whether the placement offer made by the DOE was specific enough to alert Marcus's mother that Baldwin High School was the offered location.

C.   The Court Denies the Remainder of the Appeal.

Finally, the court holds that Marcus's mother has failed to establish the remaining asserted errors in the Hearings

Officer's decision.  Marcus's mother, as the party challenging

the administrative ruling, bears the burden of proof in this

proceeding.  <u>See</u> <u>Hood v. Encinitas Union Sch. Dist.</u>, 486 F.3d

1099, 1103 (9th Cir. 2007); <u>see also</u> <u>J.W. ex rel. J.E.W. v.</u>

<u>Fresno Unified Sch. Dist.</u>, 626 F.3d 431, 438 (9th Cir. 2010)

(challenging party must show by a preponderance of the evidence

that the hearing decision should be reversed).  When an appellant

has failed to support an argument beyond a bare assertion, courts

deem the argument to be waived.  <u>Te-Moak Tribe of W. Shoshone of</u>

<u>Nev.</u>, 608 F.3d at 614 n.23; <u>Entm't Res. Group, Inc.</u>, 122 F.3d at

1217; <u>see also</u> Local Rule 7.6 (requiring factual support for each

assertion of fact in any motion or appeal).  The court rejects

the following claims of error as unsupported by the record and by

relevant legal authority.

> 1.  Whether the DOE Denied Marcus's Mother
> Meaningful Access to the IEP Process by
> Failing to Inform Her of a Change in
> Placement (May 2008 IEP).

Pages 19 to 21 of Marcus's mother's opening brief,

under the heading "The IEP of May 5, 2008 is Procedurally and

Substantially Flawed and Therefore Does Not Provide Marcus with a

FAPE," appears to argue that the DOE switched gears abruptly in

2008 by changing its recommended placement from a residential

placement in Texas to Baldwin High School.  Pet. Br. at 19-20.

Marcus's mother then asserts:

> The credible and verifiable testimony from

> parent Karen I. and the Loveland staff was
> that the DOE District never made an oral
> offer of FAPE for a public school on Maui at
> the May 5, 2008 IEP meeting (see ARA TR I
> page 55, line 7).  This action deprives the
> parent of an effective participation at the
> meeting.

Pet. Br. at 20.

This two-sentence argument is not sufficient to show any error in the Hearings Officer's Decision.  Marcus's mother does not attempt to establish that the DOE was required to make an oral offer of a particular school at the meeting, or otherwise explain why she was deprived of effective participation.  She does not allege that the Hearings Officer found her testimony to be credible, nor does she challenge an adverse factual finding against her.  In short, Marcus's mother provides no explanation sufficient to persuade the court that this presents a procedural violation of the IDEA.

> 2.   Whether the DOE Failed to Consider the
>      Harmful Effects of a Change in Placement.

Marcus's mother asserts that "the DOE has done absolutely nothing to ensure that Marcus had a safe place to live if he came back to Maui." Pet. Br. at 32.  She notes that she works off-island every other week and so there is no one home to care for Marcus.  Id.  However, Marcus's mother fails to establish that the DOE is required to provide 24-hour care under these circumstances.  Without such an entitlement, the DOE's failure to place such care arrangements in Marcus's IEP is not

error.

        3.    Whether the Hearings Officer Erred in
              Concluding that the Baldwin High School
              Program Offers Better Access to Nondisabled
              <u>Peers Than Loveland Academy.</u>

Marcus's mother argues that the Hearings Officer erroneously concluded that Baldwin High School's "fully self-contained CBI classroom exclusively with moderately-to-profoundly disabled students with ED, located in an exclusive campus area," provided better access to nondisabled peers than Loveland. Pet. Br. at 33. This argument is unpersuasive. Marcus's mother does not attempt to demonstrate that Loveland Academy is equipped to offer better access to nondisabled peers than Baldwin High School, nor does she address the provision in Marcus's 2008 IEP for interaction with nondisabled peers in 50 percent of Marcus's extracurricular and extended school year activities. <u>See</u> PET 62.

        4.    Whether the Hearings Officer Relied Too
              Heavily On the Testimony of Lisa Gifford and
              <u>Mary Auvil.</u>

The court has reviewed Judge Ezra's 2009 decision involving Marcus and is aware of the credibility issues related to Gifford that are raised by that order. <u>See</u> <u>Marcus I.</u>, 2009 WL 3378589, at *8-*9 (stating that DOE officials, including Gifford, were not forthright with the prior Hearings Officer in explaining that they had received additional information regarding Loveland Academy). The court is not aware of credibility problems specifically attributed to Auvil.

Nevertheless, the court concludes that Marcus's mother has not demonstrated that the Hearings Officer relied improperly on testimony by either Gifford or Auvil. The Hearings Officer cited Gifford's testimony that Marcus had regressed at Loveland Academy, AR at 98-99, but ultimately disagreed. Instead, based on the testimony of Marcus's teachers at Loveland, the Hearings Officer determined that Marcus was making progress at Loveland Academy and that Loveland Academy constituted an appropriate placement for Marcus. <u>See</u> AR at 109-11. Marcus's mother disputes that Marcus's father ever recommended the Texas program for Marcus, then fails to explain how this is relevant to any issue currently before the court. <u>See</u> Pet. Br. at 33-34. Marcus's mother's claim of error on this basis is unsupported.

     5.   Whether the Hearings Officer Erred by Failing to Rule on Marcus's Mother's Right to Reimbursement for Nonmedical Housing Expenses.

Marcus's mother asserts, in cursory fashion, that the DOE is liable for housing expenses under 34 C.F.R. § 300.104, regardless of whether the May 2008 and May 2009 IEPs provided Marcus with a FAPE. Pet. Br. at 34-35 (arguing that "reimbursement was a separate issue and completely independent of the placement issue"). Marcus's mother also argues that the Loveland Therapeutic Living Program, which is now fully licensed, "is appropriate for Marcus." Pet. Br. at 35-36.

The court is not persuaded that the Hearings Officer

erred in failing to award reimbursement for a residential program
in light of the Hearings Officer's findings that the IEPs offered
Marcus a FAPE.   Under 34 C.F.R. § 300.104, residential placement
is free to parents "[i]f placement in a public or private
residential program is necessary to provide special education and
related services to a child with a disability."   As the DOE
notes, neither IEP provided for residential placement.   Resp. Br.
at 26; see Pet. Exh. 2-3 (IEPs).   Because the Hearings Officer
concluded that the IEPs, as drafted, adequately provided Marcus a
FAPE, see AR at 111, the Hearings Officer necessarily concluded
that residential placement was not necessary to Marcus's
education.   As Marcus's mother does not demonstrate to this court
the necessity of residential placement, the court rejects her
claim for payment for a residential placement at this time.   If,
on remand, the Hearings Officer determines that Baldwin High
School could not have fulfilled Marcus's May 2009 IEP, the
Hearings Officer may choose to reconsider the appropriateness of
a residential placement for Marcus.

    6. Whether Five Hours of Visitation is
       Inadequate or Unreasonable.

    Marcus's mother asserts that the DOE authorized only
five hours of family visitation for Marcus to visit his family on
Maui, but that it takes nearly five hours to transport Marcus to
Maui.   Pet. Br. at 36.   She further asserts that "[i]t is
reasonable that visitation for overnight visits should require 24

hours of authorized support, and for daily visits should require a minimum of 12 to 15 hours." Id. Therefore, she argues, the DOE should reimburse Marcus's mother for all unpaid invoices for reasonable family visits. Id. The court is unable to agree with Marcus's mother that any error has been committed because this argument is devoid of citations to the factual record that support any of the above assertions.

> 7.   Whether the DOE Discriminated Against Marcus
>      Because of His Disability.

In addition to the claims discussed above, Marcus's mother asserts on page 3 of her opening brief that the DOE

> willfully and wrongfully engaged in
> discriminatory actions in failing to provide
> school transportation, willfully failing to
> provide parental visitation in violation of
> hearing Officer's orders, using the IEP
> process to harass the Plaintiff and to deny
> services, knowingly using misleading
> testimony to secure administrative and
> judicial decisions, and intentionally failing
> to provide the nonmedical room and board
> secured by federal law pursuant to 34 C.F.R.
> § 300.104 and others, in violation of Section
> 504 of the Rehabilitation Act.

The brief does not contain any additional argument regarding alleged discrimination. This argument, without any factual or legal support, constitutes no more than a bare assertion of error, and the court rules that, by failing to support it, Marcus's mother has in essence waived it before this court. See Te-Moak Tribe of W. Shoshone of Nev., 608 F.3d at 614 n.23; Entm't Res. Group, Inc., 122 F.3d at 1217; Local Rule 7.6.

VI.    CONCLUSION.

The court remands this case to the Hearings Officer for the limited purpose of answering two questions.  First, the court requests that the Hearings Officer determine whether Baldwin High School, in conjunction with any other appropriate agency that might be involved with providing the IEP's extended school year, occupational therapy, and speech therapy services, would have been able to implement these aspects of Marcus's 2009 IEP for the 2009-10 school year.  If Baldwin High School did not have the capability to provide these services, the court directs the Hearings Officer to determine whether the May 2009 IEP could have provided Marcus with a FAPE.  If, and only if, the Hearings Officer determines that the May 2009 IEP could not, after all, have offered Marcus a FAPE, the Hearings Officer may reopen proceedings to address other issues, including but not limited to any need for a residential placement.

Second, the court requests that the Hearings Officer determine whether the May 2008 educational placement offer of "the public high school in his home community" was specific enough to alert Marcus's mother that the school district was proposing Baldwin High School.  If the Hearings Officer determines that the offer was not clear as to the school placement, the court directs the Hearings Officer to determine whether the May 2008 IEP and PWN could have provided Marcus with

a FAPE for the 2008-09 school year.

If, following remand, an appeal of the Hearings Officer's new ruling is appealed to this federal court, the court directs the appealing party to inform the Clerk of Court that the appeal is related to the present case and so should be assigned to the same judge.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 9, 2011.



<u>/s/ Susan Oki Mollway</u>
Susan Oki Mollway
Chief United States District Judge

<u>Marcus I. v. Department of Education</u>; Civil No. 10-00381 SOM/BMK; ORDER PARTIALLY VACATING AND REMANDING THE HEARINGS OFFICER'S JUNE 9, 2010, DECISION

30