IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARCUS I., by and through his parent and next best friend, KAREN I., | CIVIL NO. 10-00381 SOM/BMK |
| | ORDER GRANTING PLAINTIFF'S MOTION FOR STAY PUT |
| Plaintiff, | |
| vs. | |
| DEPARTMENT OF EDUCATION, State of Hawaii, | |
| Defendant. | |

ORDER GRANTING PLAINTIFF'S MOTION FOR STAY PUT

I. INTRODUCTION.

Plaintiff Marcus I. is an autistic child receiving services from the State of Hawaii under the Individuals with Disabilities Education Act ("IDEA"). Marcus's mother, proceeding on Marcus's behalf, and Defendant Department of Education ("DOE") have had disputes over whether the DOE has offered Marcus a Free Appropriate Public Education ("FAPE") in Individualized Education Plans ("IEPs") covering several school years. The present lawsuit concerns the IEP dated May 5, 2008, and the IEP dated May 4 and 12, 2009, for the 2008-09 and 2009-10 school years, respectively. Now before the court is Marcus's mother's motion for a stay-put order authorizing Marcus to stay at his current private school at DOE expense through completion of the present litigation. This court, relying on the Ninth Circuit's decision in a related case stating that Marcus is entitled to stay put at

Loveland Academy during the pendency of this action, GRANTS the Motion for Stay Put (the "Motion").

II. STATUTORY FRAMEWORK.

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education." Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310 (1988)). The IDEA ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an IEP, and determine an appropriate educational placement for the student. 20 U.S.C. § 1414.

When a parent disagrees with the contents of an IEP, the parent may challenge that IEP by demanding an administrative due process hearing. See 20 U.S.C. § 1415(b)(6), (f)(1)(A). A parent may also enroll the child in a private program, and, upon establishing that the public school failed to provide a FAPE, the parent may seek reimbursement. See 20 U.S.C.

2

§ 1412(a)(10)(C)(ii).  The IDEA also includes a "stay put" provision that permits a child to stay in the child's current educational placement during the pendency of any administrative or judicial proceeding regarding a due process complaint notice. See 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a), (d).  It is the stay-put provision that is in issue in the Motion.

III. FACTUAL AND PROCEDURAL BACKGROUND.

The court incorporates and adopts the extensive factual background laid out in its Order Partially Vacating and Remanding the Hearings Officer's June 9, 2010, Decision, ECF No. 34.  For the convenience of the parties, the court highlights the pertinent factual information and supplements the procedural background as follows.

At the time Marcus's mother filed the Complaint in this action, Marcus was sixteen years old.  Compl. ¶ 5, ECF No. 1. Administrative Record ("AR") at 96.[1]  Marcus attends Loveland Academy, a private institution, on Oahu.  Id. at 94, 96.  Marcus lives at a residential facility run by Loveland Academy.  Id. at 96.

In a Settlement Agreement dated August 9, 2006, the parties agreed to place Marcus at Loveland Academy for the 2006-07 school year.  AR at 97.  In an earlier case before Judge David

---

[1] The Administrative Record on Appeal is located at ECF Nos. 11-22, with certain portions sealed.

Ezra, Marcus's mother had challenged Marcus's two 2007-08 IEPs, which had placed Marcus at a residential facility in Texas. Id. The Hearings Officer found in favor of the DOE. That ruling was upheld by Judge Ezra, who determined that the IEPs provided Marcus with a FAPE. See Marcus I. ex rel. Karen I. v. Dep't of Educ., Civ. No. 08-00491 DAE/BMK, 2009 WL 3378589, at *9-10 (D. Haw. Oct. 21, 2009).

Marcus's mother appealed Judge Ezra's ruling. The Ninth Circuit held that the issue was moot, because the DOE was no longer seeking to place Marcus at the Texas facility. In its unpublished Memorandum of May 23, 2011, the Ninth Circuit stated, "The only issue in this case, whether Five Oaks Achievement Center (Five Oaks) was the least restrictive environment for Marcus, is moot." Marcus I. ex rel. Karen I. v. Dep't of Educ., No. 09-17606, 434 Fed. Appx. 600, 2011 WL 1979502, at *1 (9th Cir. 2011). Regarding the issue of stay-put, the Ninth Circuit said:

> Marcus argues that the case is not moot because dismissing the appeal would have collateral legal consequences for Marcus, namely, it would affect whether the DOE allows him to remain at Loveland pursuant to the stay-put provision. The DOE stated at oral argument that if this appeal is dismissed, Marcus' stay-put will move to Baldwin High School.
>
> This line of reasoning lacks merit as a basis for finding the case not moot for two reasons. First, the stay-put provision is designed to allow a child to remain in an

> educational institution pending litigation. 20 U.S.C. § 1415(j). It does not guarantee a child the right to remain in any particular institution once proceedings have concluded. Thus, the fact that dismissing an appeal as moot would remove a child from the protection of the stay-put provision cannot in and of itself create a live controversy, as the stay-put order will lapse however the litigation concludes.
>
> Second, Marcus *is* entitled to stay put at Loveland pending his separate ongoing challenge to the offered placement at Baldwin High School for school year 2008-2009, the DOE's contrary statement at oral argument notwithstanding. The relevant section of the IDEA indicates that Marcus is entitled to stay at his then-current placement "during the pendency of any proceedings . . . [and] until all such proceedings have been completed." 20 U.S.C. § 1415(j). Marcus was at Loveland when the disputed 2008-2009 IEP was issued. As Marcus will in any event stay at Loveland, Marcus' placement at Loveland pursuant to the stay-put provision as applied to this case does not save this appeal from mootness.

Id. at *1 (footnote omitted) (emphasis in original). No issue in that earlier case remains pending before any court.

While that related action was pending before Judge Ezra, Marcus's mother, on November 10, 2009, filed her request for a due process hearing concerning the two IEPs at issue before this court. AR at 97. Hearings Officer Richard A. Young conducted the due process hearing and heard testimony over the course of five days in April 2010. AR at 95-96. The Hearings Officer issued his decision on June 9, 2010. AR at 94. He held that Marcus's mother had failed to demonstrate that the 2008 or

5

2009 IEP and any Prior Written Notice had denied Marcus a FAPE, that Baldwin High School was an appropriate placement for Marcus, and that Marcus's mother had failed to establish any discrimination by the DOE against Marcus or Marcus's mother.  AR at 112.

        Marcus's mother then appealed to this court on July 7, 2010.  See Compl. for Declaratory & Injunctive Relief, ECF No. 1. This court concluded that there were unresolved factual issues regarding: (1) whether Baldwin High School, in conjunction with any other appropriate agency that might be responsible for implementing the May 2009 IEP, had the ability to implement the extended school year, occupational therapy, and speech therapy services in that IEP; and (2) whether the May 2008 educational placement offer of "the public high school in his home community" was specific enough to alert Marcus's mother that the DOE was proposing that Marcus be placed at Baldwin High School, as opposed to Maui High School.  In its Order of May 9, 2011, this court vacated the Hearings Officer's Decision and remanded those two issues to the Hearings Officer for the limited purpose of conducting further proceedings limited to those issues.  The court denied the appeal as to all other areas.  See Order Partially Vacating and Remanding the Hearings Officer's June 9, 2010, Decision, ECF No. 34.

        Marcus's mother moved for reconsideration.  See Mot.

for Reconsideration of Order Filed May 9, 2011, ECF No. 37.  This court denied the Motion for Reconsideration on June 14, 2011, see ECF No. 46, and Marcus's mother filed Plaintiff's Motion for Stay Put on June 29, 2011.  See ECF No. 48 (designated in the case docket as "Second Motion for Reconsideration for Stay Put").

While the Motion for Reconsideration was pending before this court, Marcus's mother took an appeal to the Ninth Circuit of this court's order of May 9, 2011.  See Notice of Appeal, ECF No. 39.  On September 13, 2011, the Ninth Circuit dismissed the appeal for lack of jurisdiction, noting that the order of partial remand to the Hearings Officer was not a final appealable order.  See Order of USCA, ECF No. 53.

On November 14, 2011, Marcus's mother withdrew Plaintiff's Motion for Stay Put, saying that the DOE had actually been paying Loveland Academy's charges for Marcus.  See Ex Parte Mot. to Withdraw Mot. for Stay Put, ECF No. 59.  However, Marcus's mother now alleges that, on or around November 20, 2011, the DOE indicated that it would terminate stay-put payments for Marcus.  See Motion at 2, ECF No. 62.  The DOE allegedly confirmed on or around December 14, 2011, that it would cease payments to Loveland Academy in light of the Ninth Circuit's Memorandum of May 23, 2011, issued in the appeal from Judge Ezra's decision.  See id.  Marcus's mother therefore asks this court to resolve whether Marcus is entitled to the benefit of the

stay-put provision.[2]

IV. <u>ANALYSIS.</u>

    A.    <u>The IDEA Provides That A Student Challenging His IEP May Stay Put At His "Current Educational Placement" While The Action Is Pending.</u>

The stay-put provision, bearing the title "Maintenance of current educational placement," states:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j). Subsection (k)(4) concerns a child's placement pending a hearings officer's decision. Although the statute itself does not speak of payment or reimbursement, the Ninth Circuit has interpreted the stay-put provision as requiring a school district to fund the child's "then-current educational placement" at a private school, when applicable, during the pendency of any administrative or judicial proceedings under the IDEA. See <u>Clovis Unified Sch. Dist. v. Cal. Office of Admin.</u>

---

[2] In response to the Motion, the DOE filed its Memorandum in Opposition to Plaintiff's Motion to Stay-Put (the "Opposition"). Marcus and his mother filed their untimely Reply to Defendant's Opposition to Plaintiff's Motion for Stay Put (the "Reply") on March 22, 2012, three days after the 14-day deadline for that filing.

Hearings, 903 F.2d 635, 641 (9th Cir. 1990) (per curiam) ("Clovis").

The IDEA does not define the phrase "then-current educational placement." However, the Ninth Circuit has interpreted the phrase to mean "the placement set forth in the child's last implemented IEP." L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 902-03 (9th Cir. 2009) ("Capistrano") (citing Johnson ex rel. Johnson v. Special Educ. Hearing Office, 287 F.3d 1176, 1180 (9th Cir, 2002); Drinker ex rel. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 867 (3d Cir. 1996); Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625 (6th Cir. 1990)).

A post-placement administrative or judicial determination can also define the "current educational placement" of a child. "Where a parent unilaterally changes the placement of a child, but a subsequent administrative or judicial decision confirms that the parental placement is appropriate, the decision 'constitute[s] an agreement by the State to the change of placement' and the placement becomes the 'current educational placement' for the purposes of the stay put provision." K.D. ex rel. C.L. v. Dep't of Educ., 665 F.3d 1110, 1118 (9th Cir. 2011) (quoting Clovis, 903 F.2d at 641). "However, such a favorable decision for a parent must expressly find that the private placement was appropriate." Id. (citing Capistrano, 556 F.3d at 903-04).

Marcus's mother argues that Loveland Academy is Marcus's "current educational placement." She attaches a copy of the Ninth Circuit's Memorandum in the appeal from Judge Ezra's order, which states that "Marcus *is* entitled to stay put at Loveland pending his separate ongoing challenge to the offered placement at Baldwin High School for school year 2008-2009." Marcus I., No. 09-17606, 2011 WL 1979502, at *1; Memorandum, May 23, 2011, attached as Exhibit "A" to Motion, ECF No. 62-2 (emphasis in original). She contends that issue preclusion and collateral estoppel prevent relitigation of the stay-put issue.

The DOE responds that Loveland Academy is not the last agreed-upon placement, as the 2007-08 IEP was validated by the Ninth Circuit's Memorandum, there are no further proceedings before Judge Ezra, and the Hearings Officer in the present case has determined that subsequent IEPs have provided Marcus with a FAPE. The DOE further argues that the Ninth Circuit's Memorandum is inapplicable to the present case, because the issue of stay put was not fully litigated before the Ninth Circuit, precluding res judicata and collateral estoppel.

In the present case, Marcus's mother's due process challenge to the Hearings Officer's 2010 decision is currently on remand to the Hearings Officer for clarification of two questions posed by this court. While this action is still pending, Marcus is permitted to stay at Loveland Academy only if it was his

"then-current educational placement" at the time he filed the due-process complaint.

      B.    The Ninth Circuit's Memorandum Governs the Stay-Put Issue Before This Court.

The court is faced with the limited question of whether Marcus is entitled to remain at Loveland Academy while the underlying action, currently on remand to the Hearings Officer, is decided. Because the Ninth Circuit stated in reviewing Judge Ezra's ruling that Loveland Academy is Marcus's stay-put institution during the pendency of the current action, the court GRANTS the Motion seeking a stay-put order.

The Ninth Circuit designated the Memorandum as "not appropriate for publication and . . . not precedent except as provided by 9th Cir. R. 36-3." Id. Under Rule 36-3, the Memorandum is precedent if it is "relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."

The Ninth Circuit's decision appears to this court to be controlling with respect to the present Motion. The issue of Marcus's right to stay put at Loveland Academy while he challenges his 2008-09 IEP was expressly decided by the Ninth Circuit in the course of reviewing Judge Ezra's decision. Thus, the stay-put issue appears to fall within the "issue preclusion" category of Rule 36-3.

Admittedly, the present case deals with Marcus's IEPs

for the 2008-09 and 2009-10 school years, while it was a challenge to the 2007-08 IEPs that was litigated before Judge Ezra in Civil No. 08-00491 DAE-BMK.  Nevertheless, in determining that the appeal from Judge Ezra's ruling was moot, the Ninth Circuit relied on its understanding of Marcus's stay-put rights in connection with the challenge that is the subject of the present case, noting that "Marcus _is_ entitled to stay put at Loveland pending his separate ongoing challenge to the offered placement at Baldwin High School for school year 2008-2009, the DOE's contrary statement at oral argument notwithstanding." Marcus I., No. 09-17606, 2011 WL 1979502, at *1 (emphasis in original).

   Given the Ninth Circuit's explicit determination that Marcus is entitled to stay put at Loveland Academy during the present action, this court may not revisit the issue.  While the DOE is correct that the case before Judge Ezra is not the same as the case before this court because they deal with different IEPs, the cases are undeniably closely related and arise from very similar facts.  Certainly the facts from which any court would determine whether Marcus is entitled to a stay-put order are identical in both actions.  The Ninth Circuit must have viewed the two cases as interrelated in basing its decision in part on the proceedings in the present case.  The Ninth Circuit's decision is binding on this court.

This court acknowledges that the DOE is not making a frivolous argument. The DOE is correct in noting that no court or agency has ever determined that the DOE failed to provide a FAPE and thus must pay for Marcus to attend Loveland Academy as Marcus's stay-put institution over the course of multiple appeals. The DOE notes that stay put was not fully litigated before the Ninth Circuit. A review of the parties' submissions to the Ninth Circuit in that case shows that the issue of stay-put placement was mentioned only in passing, including in an assertion by Marcus's mother in the factual background section. See Br. of Appellant, No. 09-17606, 2010 WL 5813018 (9th Cir. Mar. 19, 2010); Def.-Appellee's Answering Br., No. 09-17606, 2010 WL 5813019 (9th Cir. May 3, 2010); Reply Br. of Appellant, No. 09-17606, 2010 WL 5813020 (9th Cir. May 17, 2010).

The "then-current educational placement" is "the placement set forth in the child's last implemented IEP." Capistrano, 556 F.3d at 902-03. The DOE argues that the 2008-09 and 2009-10 IEPs at issue in this case were never implemented, and are the focus of the current remand to the Hearings Officer. Nor was the 2007-08 IEP at issue before Judge Ezra ever implemented, even though Judge Ezra held that it offered a FAPE in setting Five Oaks in Texas as Marcus's placement.

In Capistrano, the Ninth Circuit was faced with a situation in which the student never had an implemented IEP and

the student's parents unilaterally placed the student in a private program. Although the parents prevailed before the district court on their due process challenge, the Ninth Circuit held that the private school was not the student's stay-put institution: "the district court here made no determination from which we can imply L.M.'s private program is his 'current educational placement.' Unless the district court or agency actually reaches the merits of the appropriate placement, we will not imply a 'current educational placement' for purposes of § 1415(j)." Capistrano, 556 F.3d at 904.

Marcus was apparently placed at Loveland Academy through a Settlement Agreement dated August 9, 2006, which allegedly addressed only the 2006-07 academic year. See Reply at 5, ECF No. 65. Marcus's mother repeatedly claims that the Settlement Agreement represented a bilateral placement that was sanctioned by Judge Ezra for stay-put purposes. See Motion at 6, ECF No. 62 ("It was judicially determined that Loveland was the stay put placement by the Honorable David A. Ezra, in Case No. 1:08-CV-00491-DAE-BMK."); Reply at 5, ECF No. 65 ("the settlement agreement has been judicially sanctioned as a bilateral placement agreement by both the judge Ezra and the Ninth Circuit Court of Appeals"). However, no party has pointed this court to anything in any transcript or order evidencing such a statement by Judge Ezra.

For its part, the DOE contends that the Settlement Agreement addressed Marcus's placement for only the 2006-07 school year and did not purport to extend Marcus's placement beyond that single school year. The DOE argues that Marcus's mother's decision to keep him at Loveland Academy beyond the 2006-07 school year was a unilateral placement and that the DOE should not be ordered to continue to pay his tuition there. The record is silent as to why the DOE paid for Marcus to attend Loveland Academy for a period after the 2006-07 school year.

The DOE relies on the Ninth Circuit's recent decision in <u>K.D. ex rel. C.L. v. Department of Education</u>, 665 F.3d 1110 (9th Cir. 2011), for the proposition that the student's current educational placement is not necessarily the school the student was attending when the issue of stay put was raised. That case also involved a settlement agreement. The Ninth Circuit said in that case:

> The dispute between the DOE and K.D. centers on the effect, if any, of the March 2007 settlement on K.D.'s educational placement. K.D. argues that he was placed at Loveland by the settlement agreement, and that Loveland remained his current educational placement because he continued to attend school and he never accepted any of the subsequent IEPs offered by the DOE. In response, the DOE contends that the settlement agreement only required the DOE to pay K.D.'s Loveland tuition for the 2006-07 school year and did not make Loveland K.D.'s placement for purposes of the stay put provision. We agree with the DOE.

15

Id. at 1118.

Noting that "there was no favorable agency or district court decision agreeing with K.D.'s initial unilateral placement at Loveland," the Ninth Circuit held that "Loveland Academy is not K.D.'s stay put placement because the DOE only agreed to pay tuition for the limited 2006-07 school year, and never affirmatively agreed to place K.D. at Loveland."  Id. at 1118, 1121.  In so deciding, the court distinguished the one-year tuition reimbursement provided for by the settlement agreement from an indefinite stay-put placement:

> K.D.'s settlement agreement never called for "placement," and only required tuition reimbursement.  This is not an insignificant semantic difference.  Rather, it was logical for the DOE to settle the case by agreeing to pay tuition for a limited amount of time in order to avoid the costs associated with a full due process hearing.  However, it does not follow that, by doing so, the DOE had conducted the detailed evaluation required to determine whether Loveland was the proper educational institution for K.D. under the IDEA.

Id. at 1119.

Whatever the pluses and minuses of the parties' respective positions in the present case may be, this court is not writing on a blank slate.  The Ninth Circuit has spoken clearly on the very issue before this court, and this court rules in accordance with that clear statement.  The DOE's arguments are better made to the appellate court, either on appeal or possibly

in a petition for a writ of mandamus.

V.   CONCLUSION.

In keeping with the Ninth Circuit's statement that Loveland Academy is Marcus's stay-put institution in the present case, the court GRANTS the Motion for Stay Put.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 12, 2012.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Marcus I. v. Department of Education; Civil No. 10-00381 SOM/BMK; ORDER GRANTING PLAINTIFF'S MOTION FOR STAY PUT