```
          IN THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF HAWAII

MARCUS I., by and through his )    CIVIL NO. 10-381 SOM/BMK
parent and next best friend,  )    CIVIL NO. 12-00342 SOM/BMK
KAREN I.,                     )
                              )
         Plaintiff,           )    ORDER AFFIRMING THE DECISION
                              )    OF THE ADMINISTRATIVE
     vs.                      )    HEARINGS OFFICER
                              )
DEPARTMENT OF EDUCATION,      )
State of Hawaii,              )
                              )
         Defendant.           )
_____)
```

**ORDER AFFIRMING THE DECISION
OF THE ADMINISTRATIVE HEARINGS OFFICER**

I.       **INTRODUCTION.**

Marcus I., an autistic child receiving services from the State of Hawaii under the Individuals with Disabilities Education Act ("IDEA"), and his mother have filed several challenges to aspects of various educational plans proposed for Marcus by the State of Hawaii Department of Education ("DOE").

In Civil No. 10-00381 SOM/BMK, Marcus and his mother, Karen I., sought reversal of the Administrative Hearings Officer's Findings of Fact, Conclusions of Law and Decision of June 9, 2010, arguing that an Individualized Education Plan ("IEP") dated May 5, 2008, and an IEP dated May 4 and 12, 2009, as well as the Prior Written Notices ("PWNs") dated May 16, 2008, and July 7, 2009, violated the IDEA, 20 U.S.C. §§ 1400-82.  The Hearings Officer had concluded that Defendant DOE had offered

Marcus a Free Appropriate Public Education ("FAPE") for the 2008-09 and 2009-10 school years.

The court rejected most of Marcus's arguments on appeal. However, the court remanded two issues to the Hearings Officer, stating in an order of May 9, 2011:

> The court remands this case to the Hearings Officer for the limited purpose of answering two questions. First, the court requests that the Hearings Officer determine whether Baldwin High School, in conjunction with any other appropriate agency that might be involved with providing the IEP's extended school year, occupational therapy, and speech therapy services, would have been able to implement these aspects of Marcus's 2009 IEP for the 2009-10 school year. If Baldwin High School did not have the capability to provide these services, the court directs the Hearings Officer to determine whether the May 2009 IEP could have provided Marcus with a FAPE. If, and only if, the Hearings Officer determines that the May 2009 IEP could not, after all, have offered Marcus a FAPE, the Hearings Officer may reopen proceedings to address other issues, including but not limited to any need for a residential placement.
>
> Second, the court requests that the Hearings Officer determine whether the May 2008 educational placement offer of "the public high school in his home community" was specific enough to alert Marcus's mother that the school district was proposing Baldwin High School. If the Hearings Officer determines that the offer was not clear as to the school placement, the court directs the Hearings Officer to determine whether the May 2008 IEP and PWN could have provided Marcus with a FAPE for the 2008-09 school year.

See Civil No. 10-00381 SOM/BMK, ECF No. 34.

2

On remand, the Hearings Officer, Richard A. Young, received evidence in a two-day hearing. On June 1, 2012, Young issued Findings of Fact and Conclusions of Law and a decision in which he said:

> -The home school [Baldwin High School] in conjunction with any other appropriate agency that might be responsible for implementing the May 2009 IEP had the ability to implement the ESY [extended school year], OT [occupational therapy], and speech therapy services in the May 12, 2009 IEP; and
>
> -The May 4, 2008 IEP offering educational placement at "the public high school in his home community" was specific enough to alert Mother [Karen I.] that the school district was proposing that Student [Marcus I.] be placed at the home school, as opposed to the alternative DOE high school [Maui High School].

See Civil No. 12-00342 SOM/BMK, ECF No. 16-11.

On June 14, 2012, an appeal of the Hearing Officer's decision of June 1, 2012, was filed in this court. See Civil No. 12-00342 SOM/BMK, ECF No. 1. Because this appeal is simply a continuation of the previous appeal, it was consolidated with the previous appeal in Civil No. 10-00381 SOM/BMK. See Civil No. 12-00342 SOM/BMK, ECF No. 14. Because only two limited issues were remanded to the Hearings Officer, the court considers the scope of the present appeal to be limited to the Hearing Officer's decision concerning those two issues. To the extent Marcus attempts to appeal anything unrelated to those issues, the court sees no reason to revisit other matters.

...

**II.      STATUTORY FRAMEWORK AND STANDARD OF REVIEW.**

The statutory framework and standard of review were set forth in this court's previous order of May 9, 2011.  <u>See</u> Civil No. 10-00381 SOM/BMK, ECF No. 34.  Those sections are incorporated herein by reference.

**III.     FACTUAL AND PROCEDURAL BACKGROUND.**

The factual and procedural background were also set forth in the court's previous order of May 9, 2011.  <u>See</u> <u>Id.</u> That section is also incorporated herein by reference and supplemental only as necessary.

**IV.      ANALYSIS.**

    **A.   Speculative Evidence.**

On Pages 9 through 11 of his Opening Brief, Marcus claims that the Hearings Officer improperly relied on "speculation evidence" in his Findings of Fact.  <u>See</u> Civil No. 12-00342 SOM/BMK, ECF No. 22 at 9-11.  The Opening Brief does not identify which finding is supposedly based on improper speculation.  This court has no duty to examine all of the findings to determine whether any particular one is properly supported by the evidence.  Marcus is unpersuasive in arguing that the Findings of Fact in general are based on improper speculation.

This court pressed counsel for Marcus for clarification as to what was being challenged.  Marcus did list specific

findings in response to the court's instructions, and those specific findings are addressed in this order.

### B. The Findings of Fact Accurately Reflect the Evidence.

At the hearing on the present appeal, Marcus said he was challenging Findings of Fact 70, 74, 77, 94, 95, 96, and 98.[1] Although Marcus takes issue with the substance of those findings, Marcus's challenge to those findings is misplaced. Each is supported by testimony or documentary evidence. While other evidence may have contradicted the findings, that does not mean that the Hearings Officer erred in making findings that accurately summarized evidence before him.

### 1. Finding of Fact 70.

Finding of Fact 70 states, "However, according to the special education transition teacher [Deborah Pearsall], special

---

[1] Marcus also stated at the hearing that he was challenging Finding of Fact 69, but based on the briefing submitted, that fact does not appear to be one actually being challenged. Finding of Fact 69 states, "According to Mother, special education teacher E.H. [Elana Hamm], and the COTA [Marsha Mahelona, certified occupational therapy assistant], at the May 5, 2008 IEP meeting, the DOE had never stated that the home school was being offered as Student's placement." That finding, which is consistent with Marcus's theory on appeal, was supported by the evidence. On page 31 of the April 3, 2012, transcript, Karen testified that no one mentioned at the May 5, 2008, meeting that Maui High School was being proposed as the placement for Marcus. Similarly, on page 184 of the April 3, 2012, transcript, Hamm testified that neither Baldwin High School nor Maui High School was offered as a placement to Marcus. Finally, on pages 171 to 172 of the transcript of proceedings on April 3, 2012, Mahelona testified that no offer of placement was discussed at the meeting on May 5, 2008.

education teacher J.R. [John Riggs] spoke about implementing the May 5, 2008 IEP at the home school [Baldwin High School]." Finding of Fact 70 accurately reflects the testimony of Pearsall.

Page 280 to 282 of the transcript of proceedings on April 25, 2012, establish that Pearsall was asked whether a discussion of where Marcus was going to attend school had occurred at the IEP meeting held on May 5, 2008. Pearsall responded by talking about David Riggs's input at that meeting. According to Pearsall, Riggs had discussed his special education class at Baldwin High School, as well as concerns that Baldwin was a large school environment compared to Loveland Academy. Pearsall also recalled a discussion at that meeting of the lack of fencing around the entirety of the Baldwin High School campus. Other testimony discussed in other findings may have rebutted Pearsall's testimony, but such other testimony does not render Finding of Fact 70 incorrect in noting what Pearsall testified.

**2. Finding of Fact 74.**

Marcus's challenge to Finding of Fact 74 suffers from the same problem as his challenge to Finding of Fact 70--although other testimony might rebut the substance of Finding of Fact 74, Finding of Fact 74 accurately summarizes the evidence it refers to.

For example, Finding of Fact 74 states, "However, it is noted that the May 16, 2008 PWN [Prior Written Notice] states

6

that "{Student's) [stet] educational placement is the public high school in his home community". This accurately quotes the Prior Written Notice of Department Action, ECF No. 13, Ex. 9 at PET 149.

Finding of Fact 74 then states, "Although the current private school director [Patricia Dukes] testified that this language left a lot of room for confusion, the special education transition teacher [Pearsall] testified that the IEP team did not offer Student placement at the current private school [Loveland Academy]." This statement is also supported by the record. See Test. of Patricia Dukes at 254-55, Apr. 25, 2012; Test. of Deborah Pearsall at 284, Apr. 25, 2012.

Finding of Fact 74 finally states, "According to the special education transition teacher [Pearsall], if the team wanted to place Student in a school other than the home school [Baldwin High School], the name of the alternate school would be written in the PWN." This statement was also supported by the record. See Test. of Deborah Pearsall at 285, Apr. 25, 2012.

### 3. Finding of Fact 77.

Finding of Fact 77 states, "Under the explanation section, the May 16, 2008 PWN further states, 'Parent[] and school team agree that (Student) should transition to home and family. (Student) can receive educational and non-educational benefit[s] in his home community public high school.'" This

finding accurately quotes the Prior Written Notice of Department Action dated May 16, 2008, ECF No. 13, Ex. 9 at PET 149.

### 4. Finding of Fact 93.

Finding of Fact 93 noted that, in contrast to Mother's testimony, "the special education department head [Teressa Beard] testified that the DOE was not cutting services to students. Specifically, the DOE had contracted with QBO [Quality Behavioral Outcomes] for behavioral intervention support services ('BISS') . . . for students." This statement accurately reflects Beard's testimony. For example, she stated in response to a question about whether the DOE was cutting services that, "at the time in 2010 we had contracted BISS providers for our students at Baldwin, so we had them in place. So I'm going to say, no, we did not cut them, at least not at my school." See Test. of Teressa Beard at 354-55, Apr. 25, 2012. Beard clarified that Baldwin High School had contracts for BISS services at that time. See id. at 356.

### 5. Finding of Fact 94.

Finding of Fact 94 states, "Further, both the special education department head [Teressa Beard] and the district educational specialist [Lesley Alexander] stated that the home school [Baldwin High School] and the DOE had the personnel and facilities to provide the speech-language, occupational therapy, and ESY services offered in the May 12, 2009 IEP." This

statement about the testimony is supported by the record. Teressa Beard testified that Baldwin High School was ready and able to provide the speech therapy, occupational, and ESY services offered Marcus in the May 2009 IEP.  See Test. of Teressa Beard at 326-27, Apr. 25, 2013.  Leslie Alexander similarly testified that Baldwin High School had the resources to provide the speech and occupation therapy offered Marcus in the May 2009 IEP.  See Test. of Lesley Alexander at 383-84, Apr. 25, 2013.

        Finding of Fact 94 then states, "Further, these services could be provided after-school, on weekends, and on school breaks.  If necessary, the DOE would contract service providers or people to provide these services."  These statements accurately reflect Beard's testimony.  See Test. of Teressa Beard at 327, Apr. 25, 2013 ("Baldwin High School and the Department of Education had the facilities and the personnel to provide these services after school, on the weekends, [and] during school breaks.  If we wouldn't have had the personnel available for those days and times, we would have contracted people, which was -- it's common practice to do that.").

        Finding of Fact 94 also states, "The district educational specialist [Lesley Alexander] added that the DOE already has contracts with QBO [Quality Behavioral Outcomes] to provide BISS [behavioral intervention support services] and

paraprofessional services." This statement accurately summarizes Alexander's testimony. See Test. of Lesley Alexander at 405, Apr. 25, 2013 ("there is already a big statewide contract that allows Quality Behavioral Outcomes to provide BISS services and paraprofessional services. The Department of Education is able then at any time to contract them to say that we have a need for a particular child.").

### 6. Finding of Fact 95.

Finding of Fact 95 states, "The special education department head [Teressa Beard] contracted to have the BCBA [board-certified behavioral analyst Beau Laughlin of Quality Behavioral Outcomes] and the therapist from QBO [Kimberly Mills] attend Student's May 4, and 12, 2009 IEP meetings to provide expertise on behavioral interventions and transition." This statement is generally supported by the testimony of Teressa Beard. See Test. of Teressa Beard at 327-28, Apr. 25, 2012. Beard testified that Laughlin was at the IEP meetings of May 4 and 12, 2009, and that Mills was at the IEP meeting of May 4, 2009. See id.

Finding of Fact 95 then states, "QBO was not asked to provide speech-language or occupational therapy services as the DOE had its own speech-language and OT providers." This statement also summarizes testimony. Beard testified that, at the time of the May 2009 IEP, the speech-language therapist was

10

Kristen McPhillips of the DOE.  <u>See</u> Beard Test. at 325, 330, and 363.  Beard further testified that occupational therapy would have been provided on the Baldwin High School campus.  <u>Id.</u> at 330.  Although Beard did not recall the name of the person, she testified that there was a DOE occupational therapist who provided services to students.  <u>Id.</u> at 364.

Finding of Fact 95 states, "QBO personnel were asked to help to develop plans and implement services for after school and weekends."  This statement is supported by Beard's testimony.  <u>See</u> Test. of Teressa Beard at 329-30, Apr. 25, 2013 ("In order to provide services outside of the regular school day, we would have contracted most likely QBO, because we did contract with them at the time, to provide weekends and evening after-school services.").

### 7. **Finding of Fact 96.**

Finding of Fact 96 states, "The district education specialist [Leslie Alexander] added that the BCBA [Beau Laughlin of QBO] told her that QBO could implement Student's ESY [extended school year] program, and the QBO therapist [Kimberly Mills] told her that QBO could provide Student with work readiness opportunities."  This statement generally reflects Alexander's testimony.  <u>See</u> Test. of Leslie Alexander at 382-83, Apr. 25, 2012.

### 8. Finding of Fact 98.

Finding of Fact 98 states, "The special education department head [Teressa Beard] further testified that both the BCBA [Beau Laughlin of QBO] and the therapist from QBO [Kimberly Mills] stated that they could provide services to Student any time Student came to Maui." This accurately reflects Beard's testimony. See Test. of Teressa Beard at 371, Apr. 25, 2013 ("Q: . . . and its your understanding that QBO could provide those services at any time when Marcus came to Maui. A: Yes.") and at 372 ("Q: And they [Laughlin and Mills] told you that they could just -- as soon as Marcus would come, they could provide services? A: Yes.").

### 9. Summary of Accuracy of Findings of Fact.

Marcus appears to be disagreeing with the weight or credibility that the Hearings Officer assigned to evidence in the record. The Hearings Officer's findings are clearly not unsupported by or contrary to what was in the record, and any challenge by Marcus in that regard is rejected. This court does not find in Marcus's papers any reason for this court to assign different weights or to make different credibility assessments with respect to witnesses who appeared personally before the Hearings Officer.

### C. The Court Sees No Reason to Allow Relitigation of Matters Previously Decided.

In the court's previous order, the court remanded the matter to the Hearings Officer to "determine whether the May 2008 educational placement offer of 'the public high school in his home community' was specific enough to alert Marcus's mother that the school district was proposing Baldwin High School." After taking evidence, the Hearings Officer concluded that "The May 4, 2008 IEP offering educational placement at 'the public high school in his home community' was specific enough to alert Mother that the school district was proposing that Student be placed at the home school, as opposed to the alternative DOE high school." This appeal is limited to whether that conclusion was in error.

Marcus may not now relitigate issues previously decided against him. For example, the previous appeal argued that the May 2008 Prior Written Notice failed to properly make an offer of placement in violation of section 8-56-2 of Hawaii Administrative Rules, 20 U.S.C. § 1412(a)(5), and 34 C.F.R. §§ 300.115 and 300.116. See Civil No. 10-381 SOM/BMK, ECF No. 27 at PageID #130. The court rejected those arguments. See Civil No. 10-381 SOM/BMK, ECF No. 34 at PageID #s 236-43. Marcus may not now relitigate that earlier decision on the present appeal, which is limited to two narrow issues. Moreover, to the extent Marcus now argues that the Department of Education violated section 8-60-2 of Hawaii Revised Statutes, that argument is unpersuasive.

13

Section 8-60-2 became effective on November 23, 2009, well after the May 2008 Prior Written Notice.[2]

> **D. Marcus Shows No Error With Respect to the Hearing Officer's Conclusion that Reference to "the Public High School in his Home Community" was Specific Enough to Alert Mother that the DOE Was Proposing Placement at Baldwin High School.**

To the extent Marcus challenges the Hearings Officer's conclusion that the reference to "the public high school in his home community" was specific enough to alert his mother that the school district was proposing that Marcus be placed at Baldwin High School, Marcus shows no error because that conclusion is supported by the record. Marcus's mother, Karen, went to a public school in Hawaii. See Test. of Karen I. at 115, Apr. 3, 2012. She therefore presumably understood that, in Hawaii, students generally go to the public school in the district in which they live. See id. at 116. Karen testified that Baldwin was in her district and that her other son was actually going to Baldwin. Karen testified that Marcus had attended Waihee

---

[2] The scope of any appeal to the Ninth Circuit is, of course, a different matter. See ECF No. 53 in Civil No. 10-381 SOM/BMK. It is this court's intent that the these consolidated cases be treated as if the present appeal is merely a continuation of Civil No. 10-381 SOM/BMK and that the earlier case be treated as if it had been stayed pending the remand. See Shapiro v. Paradise Valley Unified Sch. Dist., 152 F.3d 1159, 1160-61 (9th Cir. 1998) (stating that a district court should stay an action when it remands a case to a hearings officer for additional findings). Accordingly, the court orders the Clerk of Court to return the $350 filing fee paid in the most recent appeal. See Civ. No. 12-00342 SOM/BMK, ECF No. 3.

Elementary School, a school in her district.  <u>See</u> Test. of Karen I. at 116-17, Apr. 3, 2012.

On August 20, 2008, the Department of Education sent Karen a letter stating, "On 5/5/2008 an IEP Meeting was held for Marcus and a Free and Appropriate Public Education was offered at Baldwin High School."  <u>See</u> Civil No. 10-00381 SOM/BMK, Docket No. 17 at Bates Stamp MI 334.  It goes on to say, "to date, Marcus has not yet enrolled in Baldwin High School."  <u>Id.</u>  This letter was signed by Natalie Gonsalves, principal of Baldwin High School.  <u>Id.</u> at MI 335.  Although Karen does not remember receiving the letter, <u>see</u> Test. of Karen I. at 140, April 3, 2012, the letter was sent to Karen via Certified Mail and regular mail.  <u>Id.</u> at MI 336 (Certified Mail Receipt) and MI 589.  The only additional evidence suggesting that Karen did not receive this letter is her explanation that, because she did not sign for the letter, she must not have received it.  <u>See</u> Test. of Karen I. at 141.  However, nothing in the record indicates that her signature was even requested or required.

Although Karen denies that transitioning Marcus to Baldwin High School was discussed at the May 2008 IEP meeting, Lisa Gifford, who attended that meeting, testified that a final offer of a FAPE was made at that meeting to provide Marcus services at Baldwin High School.  <u>See</u> Test. of Lisa Gifford at 726, Apr 15, 2010.  Mary Auvil, the vice principal at Baldwin

15

High School, concurred that, at the May 2008 IEP meeting, the team discussed Marcus's return to Maui and attendance at Baldwin High School.  <u>See</u> Test. of Mary Auvil at 964-65, April 16, 2010. Auvil testified that, prior to the May 2008 IEP Meeting, Karen had visited Baldwin High School and told administrators that she wanted Marcus to be at home and in his home community.  <u>Id.</u> at 962.

At the hearing on remand, Deborah Pearsall testified that the May 2008 IEP meeting was held at Baldwin High School and attended by employees of Baldwin High School.  She testified that nobody from Maui High School was present at the meeting.  <u>See</u> Test. of Deborah Pearsall at 278-80, Apr. 25, 2012.  Pearsall testified that, at that meeting, David Riggs, the variance teacher at Baldwin, discussed Baldwin students' community involvement as well as how IEP goals would be implemented in his classroom.  Pearsall also testified that concerns for Marcus's safety were discussed because the campus was not fully fenced and Marcus had attempted to run away from Loveland on one occasion. <u>Id.</u> at 281.

At the hearing of April 2, 2012, Karen was asked about the Prior Written Notice of May 16, 2008.  That document discussed transportation "for transition of Marcus to his home community in Maui and relationship development with his immediate family because Marcus has not lived in the same house as his

16

family for 7 years." It also discussed an after school program "for transition into Marcus['s] community" and stated, "Marcus needs to transition to his home and family in his daily living[.] Parent[] and school team agree that Marcus should transition to home and family. Marcus can receive educational and non-educational benefit in his home community public high school." See Civil No. 10-00381 SOM/BMK, Docket No. 13 at Bates Stamp Nos. PET 148-49. Although Karen testified that she thought the Prior Written Notice's language was a "typo," see Test. of Karen I. at 40, she later conceded at the hearing on remand that the Prior Written Notice indicated that the plan was to transition Marcus "back home." See id. at 131.

Reading the May 2008 Prior Written Notice as referring to Baldwin High School is also supported by the Request for Impartial Due Process Hearing dated November 10, 2009, which states "Parent Karen [] reject IEP of 5.5.08 and prior written notice [PWN] dated 5/16/08 proposing placement at Baldwin High School as the least restrictive environment." See Civil No. 10-00381 SOM/BMK, Docket No. 12 at Bates Stamp 2.

Marcus points to no evidence demonstrating that Maui High School (located in Kahului), or any other high school, is actually part of his district. The Hearings Officer's conclusion was supported by evidence, and the Hearings Officer did not err in concluding that the language of the 2008 Prior Written Notice

17

and IEP was sufficient to alert Karen that Marcus was to be placed at his home school, which was Baldwin High School.

> **E.  Marcus Shows No Error With Respect to the Hearing Officer's Conclusion that the DOE Had the Ability to Implement the IEP.**

The court remanded this matter to the Hearings Officer for a determination of

> whether Baldwin High School, in conjunction with any other appropriate agency that might be involved with providing the IEP's extended school year, occupational therapy, and speech therapy services, would have been able to implement these aspects of Marcus's 2009 IEP for the 2009-10 school year.

After taking additional evidence, the Hearings Officer concluded:

> The home school [Baldwin High School] in conjunction with any other appropriate agency that might be responsible for implementing the May 2009 IEP had the ability to implement the ESY [extended school year], OT [occupational therapy], and speech therapy services in the May 12, 2009 IEP.

This conclusion is supported by the record.  For example, Natalie Gonsalves, the principal of Baldwin High School, testified that, if a child's IEP calls for some sort of an after school program, one is provided.  See Test. of Natalie Gonsalves at 653, Apr. 15, 2010.  In other words, Baldwin High School looks at an individual's IEP and provides the individualized program stated in the IEP.  Id. at 653-58, 661.

Although Baldwin High School does not have a weekend program for special education services, Teressa Beard, the Special Education head at Baldwin High School, testified that the Department of Education will provide necessary services on weekends. She testified that Baldwin has students receiving such services. See Test. of Teressa Beard at 784, Apr. 15, 2010. She testified that, depending on the student's needs, a person would be hired to provide evening and weekend work. Id. With respect to occupational therapy, she testified that, "whatever the IEP team decided they need on a daily or a weekly basis, a monthly basis, then that's what they get." Id. at 785-86. The same was true with respect to speech and language services. Id. at 789.

At the hearing on remand, Beard testified that Baldwin was ready and able to provide the occupational therapy, speech and language services, and extended school year services stated in Marcus's IEP. See Test. of Teressa Beard at 326-27, Apr. 25, 2012. Lesley Alexander, the district educational specialist, testified that the district had the ability to provide the services called for in Marcus's IEP. She further testified that, if the district became unable to provide those services, it had the ability to hire outside providers to fulfill the requirements. See Test. of Lesley Alexander at 383-84, Apr. 25, 2012.

Given this testimony, Marcus shows no error in the Hearing Officer's conclusion that Baldwin High School could provide the services offered to Marcus in his IEP.  There may have been testimony to the contrary, but the Hearings Officer was in a position to judge the credibility of differing witnesses.

**V.     CONCLUSION.**

The court affirms the decision of the Hearings Officer dated June 1, 2012, for the reasons stated above.

The Clerk of Court is directed to enter judgment in both consolidated cases (Civ. No. 10-00381 SOM/BMK and Civ. No. 12-00342 SOM/BMK).

IT IS SO ORDERED.

DATED: Honolulu, June 10, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Marcus I., et al. v. Dep't of Educ., State of Hawaii, Civ. Nos. 12-00342 SOM/BMK and Civ. No. 10-381 SOM/BMK; ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER